

THE **Children's**
**LAW CENTER**

www.clcny.org

**BOARD OF DIRECTORS**

**PRESIDENT**
Stephen Rinehart, Esq.

**VICE PRESIDENT**
L. Robert Batterman, Esq.

**SECRETARY**
Mary Eaton, Esq.

**TREASURER**
Stephanie Perry

Aman A. D'Melio, M.S.W.
Beatrice Frank, Esq.
Linda Gerstel, Esq.
Amy Glickman, Esq.
Hon. Howard A. Levine (Ret.)
Nan McNamara
Laurie J. McPherson, Esq.
Fern Schair, Esq.
William C. Silverman, Esq.

**EXECUTIVE DIRECTOR**
Karen P. Simmons, Esq.

**DEPUTY DIRECTORS**

**Appeals**
Barbara H. Dildine, Esq.

**Trials and Training**
Martha Schneiderman, Esq.

**DIRECTORS**

**Brooklyn**
Hilarie Chacker, Esq.
Dawn J. Post, Esq.

**Bronx**
Deborah Gould, Esq.
Sara Hiltzik, Esq.

**Queens**
Tosha Y. Foster, Esq.

**Staten Island**
Hilarie Chacker, Esq.

**Director of Social Work**
Tracey Tronolone, L.C.S.W.

**Director of Paralegal
and Volunteer Services**
Tanisha S. McKnight, Esq.

*Every child
at the center
of a court case
has a unique voice,
and that voice
must be heard.*

November 28, 2016

Hon. Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>Tait v. Powell, et al.</u>, 16-cv-06377 (ENV) (RER)

Dear Judge Vitaliano:

The Children's Law Center ("CLC") is a nonprofit law firm that represents children in custody, visitation, guardianship, paternity, family offense, child protective, and related proceedings in the Family Courts and the Integrated Domestic Violence Parts of the Supreme Court of the State of New York, when appointed to do so by judges of those courts, pursuant to a contract with the New York State Office of Court Administration. In addition, CLC represents its child clients in appeals from proceedings decided by the Family Courts and Integrated Domestic Violence Courts. Pursuant to its contract, CLC also is permitted to continue to represent its clients in related proceedings in State and Federal courts when, in its judgment, it is necessary to do so in order to zealously represent its clients' interests.

On August 23, 2016, CLC was assigned to represent K.T. and C.T. ("the children"), now-eight-year old twin girls, who are the subject of this case, in custody proceedings initiated in the Kings County Family Court by the defendant, Angella Powell, in this matter, who is the children's mother ("the mother"), against the plaintiff, Myhood Tait, who is the children's father ("the father"). Because the father seeks to enjoin the ongoing custody proceedings in the Kings County Family Court, have this Court enter a preliminary injunction, staying and/or overriding orders entered by the Kings County Family Court and the Appellate Division of the Supreme Court of the State of New York, Second Department, and transfer those proceedings to this Court, the children's interests in the decisions that have been made—and that, in the absence of a stay, will continue to be made—in the Family Court proceedings, and in the Appellate Division, will be directly affected by this action. Accordingly, CLC intends to make a motion to intervene in this action, on behalf of the children, and respectfully submits that this Court should take no action with respect to the plaintiff's "Letter Motion to Reconsider Issuance of Preliminary Injunction"

1

44 Court Street, 11th Floor
Brooklyn, NY 11201
TEL 718·522·3333
FAX 718·522·7376

820 Concourse Village West, 5th Floor
Bronx, NY 10451
TEL 718·741·3400
FAX 718·741·9658

118-21 Queens Boulevard, Suite 417
Forest Hills, NY 11375
TEL 718·544·3499
FAX 718·544·4450

36 Richmond Terrace, Suite 304
Staten Island, NY 10301
TEL 718·447·8384
FAX 718·447·3893

*Our mission is to give a child a strong and effective voice in a legal proceeding that has a critical impact on his or her life.*

("Reconsideration Motion") until after CLC has had the opportunity to make that motion, and respond substantively to the plaintiff's legal arguments.

In addition to the fact that the children's interests could be drastically affected by any decision that this Court makes in this action, and, consequently, they should be represented and heard, it is important to note that the mother, who has been assigned counsel in the Family Court, pursuant to County Law § 18-b, based on her indigence, will likely be required to proceed *pro se* in this Court, as the assignment of her Family Court attorney, Anna Stern, Esq., does not extend to proceedings in this Court.

Moreover, it is clear that this Court correctly determined that the plaintiff has little likelihood of success on the merits of his case, and that, consequently, a temporary restraining order was unwarranted.

This is the father's fourth attempt to obtain a stay of the Family Court's orders from a court other than the Family Court. This is in addition to the numerous times that the father has asked the Family Court to stay its own orders. Nevertheless, despite the fact that no stay has been granted (except for an interim stay, issued by one judge of the Appellate Division, on October 21, 2016, which was dissolved 14 days later by the decision of a full panel of that Court), the plaintiff has failed to comply with those orders. Thus, all of the arguments that the father's attorney, Audrey Thomas, Esq., presents in her Reconsideration Motion have been heard before by both the Appellate Division and this Court.

It is absolutely clear that, although the father seeks to recast this case as an action for violation of 18 U.S.C. § 1204 (Complaint, Count 1), a breach of contract action (Count 2), an action for violation of the Immigration and Naturalization Act (Count 3), and an action for declaratory judgment (Count 4), the dispute between the parties to this action is, ultimately, a child custody dispute, over which the New York State Family Court has exclusive jurisdiction. As such, this Court lacks jurisdiction over this proceeding, based on the domestic relations exception to federal jurisdiction. Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (The domestic relations doctrine "divests the federal courts of power to issue divorce, alimony and child custody decrees"). Moreover, the federal courts routinely seek to avoid becoming "embroiled in factual disputes concerning custody and visitation matters," Neustein v. Orbach, 732 F. Supp. 333, 339 (E.D.N.Y. 1990), because the best interests of the child "has always been held to be an issue of paramount state concern." Thompson v. Vacco, 1997 WL 539949, *4 (S.D.N.Y. 8/29/1997). See also Lehman v. Lycoming County Children's Servs. Agency, 458 U.S. 502, 512 (1982) ("[F]ederal courts consistently have shown special solicitude for state interests in the field of family and family-property arrangements"); Moore v. Sims, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern"); Torres v. Family Court/Administration for Children's Services, 2001 WL 1111510, *1 (S.D.N.Y. 9/20/2001) ("This exception to federal jurisdiction is based on 'the policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which the federal courts lack'");

Lhotan v. D'Elia, 415 F. Supp. 826 (E.D.N.Y. 1976) ("[I]t has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, *a fortiori*, rights of visitation"). As Judge Townes stated in McKnight v. Middleton, 699 F. Supp.2d 507, 516 (2d Dep't 2010), aff'd, 434 Fed. Appx. 32 (2d Cir. 2011):

> At the heart of the domestic relations exception lies federal-court recognition that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Indeed, it is well settled that federal courts generally do not have jurisdiction over such matters based upon a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack."

Although the exception has been held to be narrow, Fernandez v. Turetsky, 2014 WL 5823116, *2 (E.D.N.Y. 2014) ("[T]he exception is narrow, and encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree"); McKnight, 699 F. Supp.2d at 517; it clearly applies when the plaintiff's "claims begin and end in a domestic dispute." See Schottel v. Kutyba, 2009 WL 230106, *1 (2d Cir. 2009).

In this action, the father's order to show cause specifically seeks a custody order—"[d]irecting [the mother] to surrender the Children that are the subject of the complaint filed in connection to this action to [the father] pending resolution of the Civil Action." Such an order would effectively determine a domestic dispute, and would be in direct contravention of the current orders of the Family Court—orders which, at this juncture, the Appellate Division has declined to stay or otherwise modify, despite two attempts by the father to obtain such orders.

Further, the father specifically contends that the custody litigation between the parties should be heard in the federal court. See Plaintiff's Memorandum of Law, dated November 22, 2016 ("MOL"), ¶ 53 (The mother, "being a foreign national would have been required to proceed with her [custody] case in Federal Court");[1] see also Id., ¶ 29 ("Considering that the father petitioned for the children to immigrate to the United States by filing a petition with the USCIS, it is submitted that the Attorney General of the United States is best suited to determine[] the issues pertaining to the mother[,] a foreign national, the children and the father[,] a United States citizen"). In addition, the father

---

[1]  This clearly is incorrect, as there is absolutely no requirement that a foreign national must litigate custody of his or her children in the federal court. Indeed, were that so, a federal court that is located in a city such as New York City would be inundated with custody and visitation proceedings. Moreover, the cases cited by the plaintiff do not stand for any such proposition. Further, for example, in Ahmad v. Khalil, 40 Misc. 3d 1206(A), 2013 WL 3388641 (Sup. Ct. Kings County 2013), where the children and the mother had resided in Jordan for years, while the father resided in Brooklyn, the court found that, pursuant to the UCCJEA, the appropriate forum in which to litigate regarding custody of the children was Jordan—not the United States District Court.

3

directly challenges the correctness of the Family Court's actions and orders.  See MOL, ¶ 14 (the mother's "petition should not have been entertained"); Id., ¶ 33 (referring to "the erroneous order secured by fraud from the Family Court"); MOL, ¶¶ 48, 53;[2] Affirmation of Audrey Thomas, Esq., dated November 22, 2016 ("Thomas Aff."), ¶¶ 80-81 (disagreeing with Family Court's ruling; Reconsideration Motion, pp. 3, 4  ("Judge Kusakabe has ordered the surrender of the children's passports based on his erroneous interpretation of the law").[3]

Although the father contends that the primary issue before the Family Court, and this Court, is whether the children are United States citizens (MOL, ¶¶ 13, 28, 29, 31, 32; Thomas Aff., ¶¶ 86-87), the real issue before the Family Court, and that the father seeks to present to this Court, is what custody and visitation arrangements would be in the children's best interests.  In making that determination, the Family Court is required to consider the "totality of the circumstances."  Eschbach v. Eschbach, 56 N.Y.2d 167, 171, 451 N.Y.S.2d 658, 660 (1982); Friederwitzer v. Friederwitzer, 55 N.Y.2d 89, 95, 447 N.Y.S.2d 893, 896 (1982).  Among the factors to be considered are the parental guidance each parent is able to provide, each parent's ability to provide for the child's emotional and intellectual development, each parent's ability to provide for the child financially, Eschbach, 56 N.Y.2d at 172, and the "effect an award of custody to one parent might have on the child's relationship with the other parent."  Blakeney v. Blakeney, 99 A.D.3d 898, 952 N.Y.S.2d 295, 297 (2d Dep't 2012).  See also Schultheis v. Schultheis, 141 A.D.3d 721, 722, 34 N.Y.S.3d 633, 634 (2d Dep't 2016) ("In making a determination as to what custody arrangement is in the children's best interests, the court should consider the quality of the home environment and the parental guidance the custodial parent provides for the children, the ability of each parent to provide for the children's emotional and intellectual development, the financial status and ability of each parent to provide for the children, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the children's relationship with the other parent.  The court should also consider the children's wishes, weighed in light of their ages and maturity").  Thus, whether the children are or have the ability to become citizens of the United States certainly is relevant to the best interests determination, but, contrary to plaintiff's contention in the Family Court, the Appellate Division, and in this Court, it undoubtedly is not dispositive.[4]  See Eschbach, 56 N.Y.2d

[2]  The father also, inconsistently, argues that the appropriate venue for this proceeding was the Queens County Family Court (MOL, ¶¶ 53, 60).

[3]  The Family Court judge who is presiding over this matter is the Hon. Dean T. Kusakabe.

[4]  However, the Family Court has not purported to determine this issue, although it did find as a fact that, it was undisputed that, prior to October 2015, the children resided in Jamaica, West Indies, in the sole custody of the mother.  As such, the United States Attorney General is neither an interested, nor a necessary party to this proceeding.  Indeed, it is highly unlikely that she has any information regarding "whether these children acquired United States Citizenship, and whether [defendant] surrendered custody to [plaintiff]" (Reconsideration Motion, p. 3).

at 174 ("the 'existence or absence of any one factor cannot be determinative..., since the court must "consider the totality of the circumstances.""); Norfleet v. Williams, 116 A.D.3d 865, 866, 983 N.Y.S.2d 425, 426 (2d Dep't), leave to appeal denied, 23 N.Y.3d 908 (2014) (same); Blakeney, 99 A.D.3d at 898 (same); Miller v. Pipia, 297 A.D.2d 362, 364, 746 N.Y.S.2d 729, 731 (2d Dep't 2002) (same).

However, the father seeks to convince this Court that it should take over this proceeding and treat the children as if they were commodities who were the subjects of a contract between the parents. Apart from the fact that this assertion runs directly contrary to every legal principle related to the custody of children,[5] it is clear that the "terms" of any such alleged contract are entirely unclear, and that all of the documentation provided by the father, thus far, in either the Family Court or this Court, does not validate any of his claims. Further, it is highly doubtful that the supposed "damages" resulting from the mother's alleged breach of contract would rise to a monetary level that would support federal jurisdiction.

Moreover, the father's attempts to assert a cause of action pursuant to 18 U.S.C. § 1204. However, he cannot demonstrate that the mother has engaged in international parental kidnapping, as: (a) the father cannot show that he had a right to physical custody of the children that was superior to the mother's;[6] and (b) the mother's efforts to leave the United States with the children, which thus far have been unsuccessful, due to the father's refusal to comply with court orders, have been pursuant to a valid court order, which was obtained in conformity with the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), New York Domestic Relations Law § 75, et seq.[7] See 18

---

[5]  It is black letter law that, even where the parents have entered into a clear agreement regarding custody and visitation, a court must make an independent judgment as to whether that agreement is in the children's best interests, and, if not, must reject or modify that agreement. See Eschbach, 56 N.Y.2d at 171 ("[N]o agreement of the parties can bind the court to a disposition other than that which a weighing of all the factors involved shows to be in the child's best interests. Thus, an agreement between the parties is but one factor to be weighed by the court in deciding whether a change of custody is warranted"); Santoro v. Santoro, 224 A.D.2d 510, 511, 638 N.Y.S.2d 478, 480 (2d Dep't 1996) ("We note that while the original agreement between the parties placing custody of [the child] with the mother is entitled to solemn consideration, it cannot bind the court to a disposition other than that which a weighing of all the factors involved shows to be in the child's best interests"); Schaefer v. Brennan, 170 A.D.2d 879, 881, 566 N.Y.S.2d 705, 708 (3d Dep't 1991) (same).

[6]  Under New York law, neither parent has a superior right to custody. D.R.L. § 70(a) ("In all cases there shall be no prima facie right to the custody of the child, but the court shall determine solely what is for the best interest of the child, and what will best promote its welfare and happiness"); D.R.L. § 240 (1)(a) ("In all cases there shall be no prima facie right to the custody of the child in either parent").

[7]  The mother never has contended that the New York courts do not have jurisdiction over custody issues regarding the children. If the father contends that New York does not have child custody jurisdiction over the children—which it clearly does—the only other alternative forum would be Jamaica. The UCCJEA clearly does not contemplate the federal courts taking jurisdiction over custody and visitation issues, as it expressly refers, throughout, to jurisdiction as between competing states, and it provides that a foreign country also is to be viewed as a state. See D.R.L. § 75-d(1). Thus, the mother could not possibly have "known," as Ms. Thomas seems to contend, that "any claims involving these children would fall under the jurisdiction of the [federal] Courts" (Reconsideration Motion, p. 3)—as it is clear that this statement is

U.S.C. § 1204 (c)(1).  Furthermore, plaintiff lacks standing to bring an action pursuant to that purely criminal statute.  See Alaji Salahuddin v. Alaji, 232 F.3d 305, 312 (2d Cir. 2000) (absent a showing that Congress intended to create a private right of action to enforce a criminal statute, no such right may be inferred).

Further, as this action seeks to override orders of the Family Court, which were rendered before this Federal action was commenced, and complains that the father has been injured by those orders, it also runs afoul of the Rooker-Feldman doctrine.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("Rooker–Feldman is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").  See also Fernandez, 2014 WL 5823116, *3 ("The so-called Rooker-Feldman doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments").

In addition, the father's presentation of the facts of this case is misleading and incomplete.  However, in this letter, I will not go into detail about the many misstatements in his attorney's account, except for a few key points.  First, the father repeatedly alleges that the mother fraudulently obtained a custody order, upon his default, by failing to serve him with her custody petition.  However, the father fails to inform this Court that, on October 11, 2016, he made a motion in the Family Court, seeking to vacate that final order of custody.  On October 26, 2016, in response to that motion, the Family Court Judge scheduled a traverse hearing for November 17, 2016.  On November 17, all parties appeared, and the mother was prepared, with her witness, to proceed.  Instead, however, the father's attorney, Ms. Thomas, asked the Family Court to stay its own proceedings, pending her application to this Court for a stay and transfer of "venue" of the Family Court proceedings to this Court.  As a result, the court, the parties' attorneys and the attorney for the children ("AFC") became embroiled in an hour-long discussion of the father's application for an adjournment of the traverse hearing, rather than simply proceeding with the hearing, which most likely could have been completed in that amount of time.  At the end of that time, Judge Kusakabe stated that he would grant the requested adjournment, but, contrary to Ms. Thomas's claim in her Reconsideration Motion, p. 2, the judge explicitly stated that he would not stay his orders, permitting the mother to return to Jamaica with the children, pending a final resolution of the Family Court proceedings, and directing the plaintiff to turn over the passports by November 23, 2016, although his order obviously could be stayed by the Appellate Division or the federal court.[8]  Thus, it is disingenuous for the defendant to complain that he simply wishes to be heard (MOL, ¶¶ 61-65), when he has rejected and delayed that opportunity at every turn.

---

incorrect.  In addition, the father's inconvenient forum arguments (MOL, ¶¶ 14, 34-42), miss the mark, as none of the cases cited find that litigation regarding child custody, visitation or child support should take place in the federal court.

[8]  CLC has ordered a copy of the transcript of that proceeding, but has not yet received it.

Finally, it should be noted that the father has been in violation of the Family Court's orders to produce the children's passports either to the Family Court or to the mother since September 23, 2016.[9]  Moreover, while it is true that a justice of the Appellate Division granted an interim stay of that order on October 21, 2016, based only on the father's papers in support of his application, a panel of that Court, after also reviewing the submissions of the defendant's attorney and the AFC, subsequently denied leave to appeal from the interim Family Court orders, and, consequently, found that the defendant's application for a stay pending appeal was academic.  Contrary to Ms. Thomas's claim (Reconsideration Motion, pp. 2, 5; Thomas Aff., ¶ 88), that ruling did not reflect a purely procedural finding that the Appellate Division lacked jurisdiction to review any temporary order of the Family Court.  Rather, the Court declined to grant leave to appeal, see New York Family Court Act § 1112(a) ("An appeal may be taken … in the discretion of the appropriate appellate division, from any other [non-final] order under this act"), as the matter did not present a situation in which the father had demonstrated a likelihood of success on the merits, and shown that the failure to grant a stay was likely to result in serious harm.

Further, on the same date that this Court denied the father's *ex parte* application for a temporary restraining order, the father's attorney returned to the Appellate Division to seek reargument or renewal of that Court's previous denial of leave to appeal and a stay.[10]  In addition, the father contended that he had a right to appeal from the Family Court's dismissal of a writ of habeas corpus, which he previously filed, and which was deemed satisfied, in court, and dismissed orally on October 11, 2016.  However, because the Family Court failed to enter a written order reflecting that action at that time, it entered that order, in writing, upon Ms. Thomas's request, on November 14, 2016.  Ms. Thomas then attempted, unsuccessfully, to convince the Appellate Division that it should stay all of the other orders entered with respect to the children, pending plaintiff's appeal, allegedly as of right, from the order dismissing the writ.[11]

Accordingly, CLC intends to make a motion to intervene in this proceeding, and respectfully submits that this Court should take no further action in this case until the

---

[9]  On November 28, 2016, the mother's attorney filed a motion in the Family Court, seeking a finding holding the father in contempt.

[10]  At that time, neither the mother's attorney nor the AFC knew of the father's application in this Court, or of this Court's disposition of that application, as the plaintiff's attorney did not serve either attorney with "courtesy copies" of her papers and this Court's orders until that evening.

[11]  The purpose of a writ of habeas corpus in the Family Court is to have the child brought into court so that the court can determine with whom it is in the child's best interests to remain, pending resolution of the proceeding.  See Garcia v. Ramos, 79 A.D.3d 872, 873, 912 N.Y.S.2d 660, 662 (2d Dep't 2010) (The purpose of a writ of habeas corpus is to require production of a child in court so that the court, after "due consideration," may make a determination as to custody).  Accordingly, it is questionable whether the dismissal of a writ, once it is satisfied by the production of the children in court, is a final dispositional order within the meaning of Fam. Ct. Act § 1112(a).  Indeed, in this case, the father's motion to vacate the final custody order remains pending, as does the traverse hearing, and other ongoing proceedings.

mother and the AFC have had an opportunity to be heard. Moreover, this Court correctly concluded that the likelihood that the father would succeed on the merits of his claims was insufficient to warrant the entry of a temporary restraining order on his behalf.

Thank you for your consideration.

Respectfully submitted,

Janet Neustaetter
Supervising Attorney, Appellate Unit
The Children's Law Center
(718) 522-3333, ext. 135
jneustaetter@clcny.org