UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MYHOOD IAN TAIT,

                      Plaintiff,

    -against-

ANGELLA HOPAL POWELL,

                      Defendant,

ATTORNEY GENERAL LORETTA E. LYNCH,

                      Respondent

CHILDREN'S LAW CENTER,

                      Intervenor.

-----------------------------------------------------------x

MEMORANDUM OPINION

16-cv-06377 (ENV) (RER)

VITALIANO, D.J.

    On November 23, 2016, plaintiff Myhood Ian Tait filed a complaint against defendant Angella Hopal Powell, the mother of his twin 8-year-old girls, raising claims for (1) violations of the federal criminal kidnapping statute, (2) breach of contract, (3) violations of the Immigration Nationality Act ("INA") and (4) declaratory judgment.[1] Compl., ECF No. 1. In conjunction with the filing of the complaint, Tait made an application for a preliminary injunction (i) transferring all proceedings between him and Powell now pending in Kings County Family Court to this Court and (ii) directing Powell to surrender the children to him pending resolution of his claims. Pl.'s Mot. 1-2, ECF No. 2. Following a hearing and for the reasons then stated in open court, Tait's motion for a preliminary injunction was denied and the complaint was dismissed.

---

1. Plaintiff also named Loretta E. Lynch, the then-Attorney General of the United States, as what he termed a "Non-Party Respondent." Compl. ¶ 8, ECF No. 1.

1



This Opinion is filed to provide a more expansive explanation of that decision.

## Background and Procedural History

This lawsuit springs from a contentious dispute between parents concerning the custody of their children. Tait and Powell used to be romantically involved but are not, and were never, married to each other. Compl. ¶ 21.[2] As a result of their romance, twin girls (KT and CT) were born abroad in Kingston, Jamaica in August 2008. *Id.* at ¶ 23. At that time, both Tait and Powell were Jamaican citizens, but he subsequently obtained United States citizenship and now resides in Queens. *Id.* at ¶¶ 6-7, 67. Although the children lived primarily in Jamaica with Powell during the first seven years of their lives, they also spent time in Jamaica with their father's family and with Tait himself when he was in Jamaica. *Id.* at ¶¶ 27-28.

This living arrangement changed in October 2015 after Tait and Powell agreed that the children should move to the United States to live with plaintiff. *Id.* at ¶ 28. In line with the parental agreement, Tait petitioned for the children to immigrate to the United States, and they secured status as United States lawful permanent residents ("LPR"). *Id.* at ¶¶ 10, 12-13. The children arrived in the United States on October 13, 2015, and moved in with their father in his house in Queens. *Id.* The children continued to live there until July 4, 2016. *Id.* at ¶ 13. On that date, Powell, while on a trip to the United States, asked Tait if the children could visit her in Brooklyn. *Id.* at ¶ 53. Tait agreed, but Powell never returned the children to him. *Id.* at ¶¶ 54-55. The parents, now at odds, then kicked off a stream of legal proceedings that eventually brought them here.

As might be surmised, federal court was not the first stop. On July 27, 2016, Powell filed a *pro se* petition in Kings County Family Court, seeking an order granting her custody of the

---

2. Unless otherwise indicated, the facts set forth in the complaint are accepted as true.

2

children. Aff. Supp. Mot. Intervene ¶ 9, ECF No. 11-1. Tait did not appear at the August 23, 2016, hearing on that petition, and Family Court issued a final order granting Powell custody in light of Tait's default. *Id.* at ¶ 11. On September 8, Tait filed his own custody petitions in Family Court, and, on September 23, Tait was ordered to turn the children's passports over to Powell. *Id.* at ¶¶ 15-16.

Plaintiff moved Family Court, on October 11, for an order, *inter alia*, vacating the August 23 and September 23 orders and directing that the children be returned to him. *Id.* at ¶ 18. Following a hearing on October 18, Family Court granted Powell's request to return to Jamaica with the children, pending a further hearing, and again ordered Tait to produce their passports. *Id.* at ¶¶ 22, 25. Three days later, Tait sought leave in the Appellate Division, Second Department to appeal the October 18 orders, resulting in an interim stay. *Id.* at ¶¶ 25-26. On October 26, Family Court scheduled a traverse hearing for November 17 to determine whether the custody order should be vacated on the grounds that Powell's custody petition was never served on Tait. *Id.* at ¶ 29. On November 4, the Second Department denied Tait leave to appeal and dissolved its interim stay. *Id.* at ¶ 30. On November 17, the traverse hearing was adjourned after Tait represented that he intended to file a motion in this Court to stay the Family Court proceedings and transfer them here. *Id.* at ¶¶ 33, 39. Family Court also ordered that Tait, absent a federal court order to the contrary, produce the children's passports by November 23. *Id.* at ¶ 38.

Tait filed his complaint in this Court on November 23, 2016. Compl. That same day, Tait also sought, by order to show cause, a temporary restraining order (i) staying proceedings in Family Court and (ii) barring Powell from removing the children from New York. Pl.'s Mot. 1-2. Plaintiff's motion also sought a preliminary injunction (i) transferring all proceedings in Family Court to this Court and (ii) directing Powell to surrender the children to him pending

resolution of the case. *Id.* The Court denied plaintiff's request for a TRO, Order, ECF No. 7, and issued an order scheduling a show-cause hearing for December 13 on plaintiff's motion for a preliminary injunction, Order to Show Cause, ECF No. 8.

Tait's subsequent motion for reconsideration of the denial of the TRO was denied. 11/28/16 Order. Then, having finally succeeded in her quest to obtain the children's passports and having made arrangements to return to Jamaica, Powell was granted leave to appear by telephone at the show-cause hearing. 12/8/16 Order; Def.'s Mot., ECF No. 14. The Children's Law Center ("CLC"), which represented the children in the Family Court proceedings, was subsequently granted leave to intervene in the action. 12/12/16 Order. CLC filed a memorandum opposing Tait's motion for a preliminary injunction. Pretrial Mem., ECF No. 17.

On December 13, 2016, the Court held the scheduled show-cause hearing, at which plaintiff's counsel and counsel for CLC (effectively the law guardians for the children) appeared in person, while Powell appeared by telephone. 12/13/16 Minute Entry. Tait's counsel and CLC counsel pressed their arguments, with special focus on whether the Court possessed subject matter jurisdiction over the case. The parties having been heard, the Court denied plaintiff's motion for a preliminary injunction and dismissed the case for want of subject matter jurisdiction. *Id.*

## Applicable Law

Whether to grant or deny a preliminary injunction lies within the sound discretion of a district court. *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 344 (S.D.N.Y. 2008); *see also S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir. 2001). It is well-settled that a "party seeking a preliminary injunction must demonstrate '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of

hardships tipping decidedly in the movant's favor.'" *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)). Elementarily, of course, the court must have subject matter jurisdiction over the controversy. *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014).

## Discussion

Federal courts, unlike their state brethren, are courts of limited jurisdiction. *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). "A federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation; it is nothing less than an unconstitutional usurpation of state judicial power." *Atanasio v. O'Neill*, No. 16-CV-2269 (ENV) (RLM), --- F. Supp. 3d ----, 2017 WL 384085, at *1 (E.D.N.Y. Jan. 27, 2017) (quoting *Martin v. Wal-Mart Stores, Inc.*, 709 F. Supp. 2d 345, 346 (D.N.J. 2010)); Charles Alan Wright et al., 13 Federal Practice & Procedure § 3522 (3d ed. 2008). Consequently, given their limited role in the judicial system established by our Constitution, federal courts have a continuing and independent duty to ensure that they possess subject matter jurisdiction, and must dismiss a case—even *sua sponte*—when they find subject matter jurisdiction lacking. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Durant*, 565 F.3d at 62 (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 43, 53 L. Ed. 126 (1908)).

Tait's complaint alleges that subject matter jurisdiction exists under 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity of citizenship). The Supreme Court, however, has recognized a domestic relations exception to subject matter jurisdiction that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*,

5

504 U.S. 689, 703, 112 S. Ct. 2206, 2215, 119 L. Ed. 2d 468 (1992). The domestic relations exception springs from the Supreme Court's century-and-a-quarter-old recognition that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States," *In re Burrus*, 136 U.S. 586, 593-94, 10 S. Ct. 850, 853, 34 L. Ed. 500 (1890), and it is equally applicable whether jurisdiction is asserted under § 1331 or § 1332, *see Dowlah v. Dowlah*, No. 09-CV-2020 (SLT) (LB), 2010 WL 889292, at *4 (E.D.N.Y. Mar. 10, 2010) ("While the exception finds its origin in an interpretation of the federal courts' diversity jurisdiction, it also has been applied to federal question jurisdiction . . . .").

Because it is limited to divorce, alimony, and child custody decrees, the domestic relations exception is undeniably very narrow in its focus, *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995); yet, the exception is also understood to grant to federal courts the "discretion to abstain from exercising jurisdiction over issues on the verge of being matrimonial in nature as long as full and fair adjudication is available in state courts," *Fischer v. Clark*, No. 08-CV-3807 (JS) (ARL), 2009 WL 3063313, at *2 (E.D.N.Y. Sept. 24, 2009) (alterations omitted) (quoting *Mitchell-Angel v. Cronin*, No. 95-7937, 1996 WL 107300, at *2 (2d Cir. Mar. 8, 1996) (unpublished)). For instance, the Second Circuit has applied the exception to tort claims where those claims "begin and end in a domestic dispute." *Schottel v. Kutyba*, No. 06-1577-cv, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (unpublished). The *Schottel* court, in concluding that the domestic relations exception divested federal courts of subject matter jurisdiction over the suit, noted that the plaintiff's "complaint makes clear that her tort claim for monetary damages is, at heart, a dispute surrounding the custody of a child." *Id.* Declining to elevate form over substance, the Second Circuit justified the application of the domestic relations exception specifically on the ground that

"a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." *Id.*

Regardless of the labels, words and characterizations, the dispute between Tait and Powell is a family law dispute, plain and simple. It could not be more obvious. Analysis only confirms the obvious. For example, Tait's first claim asserts that Powell, by taking the children in July 2016 and not returning them to him, violated the federal statute criminalizing international, parental kidnapping. Compl. ¶¶ 52-64; 18 U.S.C. § 1204. More particularly, this cause of action complains that Powell "secured custody by fraud and misrepresentation" by representing to Family Court that Tait was properly served with process. Compl. ¶ 57. Deep digging is not required to reach the conclusion that the custody of the children is the subject and object of this claim. Indeed, the factual allegations are strikingly similar to those reported in *Schottel*, where it was found that the plaintiff's claim fell within the domestic relations exception to otherwise-present subject matter jurisdiction. *See* 2009 WL 230106, at *1 (noting that the complaint alleged that the defendants made fraudulent misrepresentations to the domestic relations court and "that, as a result of this fraud and coercion, Schottel ha[d] been deprived of custody and visitation rights"). In the same fashion, Tait's first claim falls within the domestic-relations exception.[3]

The second cause of action that Tait advances is for breach of contract. Compl. ¶¶ 65-75. Breach-of-contract actions are frequently litigated in federal court, but the object of this alleged contract squarely provides for the custody of the children. Not running from the purported

---

3. Moreover, Tait lacks standing to seek a civil remedy under this federal criminal statute. *See* 18 U.S.C. § 1204 (providing no indication of a private right of action); *Corrado v. N.Y. Office of Temp. & Disability Assistance*, No. 15-CV-7316 (SJF) (AYS), 2016 WL 3181128, at *5 (E.D.N.Y. June 2, 2016) ("It is a 'general precept of criminal law that unless the statute specifically authorizes a private right of action, none exists.'" (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998))).

7

contract's custodial nature, Tait contends that either an implied or express contract was part and parcel of Powell's alleged request that the children come to the United States to live with him. *Id.* at ¶¶ 65-75. He further alleges that, as a component of this supposed deal, he was to, and did, incur a variety of expenses, including $200,000 for the purchase of a home in Queens, "several thousand dollars repairing said house to provide a safe healthy home environment" for the children and $12,000 as a result of filing applications to obtain LPR status for them. *Id.* at ¶¶ 67-69. In other words, the steps he took were all in furtherance of his alleged deal with Powell—a deal, he says, in which she agreed to turn over physical custody of the children to him.

Powell's breach, Tait obviously alleges, was her failure to return the children to him. But, ultimately, whether Powell breached is immaterial. Indeed, at bottom, the details of the allegedly breached contract, its propriety, or even whether Powell would offer a different interpretation of the deal are all immaterial to a determination of federal subject matter jurisdiction over the present case. They are described and referenced mainly for context because it is context that is critical here. What the context makes crystal clear is that the controversy giving rise to this claim, and to all the claims for which Tait seeks relief, regardless of how he identifies them, is about the custody of children. Thus, his second cause of action also falls within the heartland of the domestic relations exception to federal subject matter jurisdiction. *See Schottel*, 2009 WL 230106, at *1.

This theme guides the evaluation of Tait's third cause of action, in which he claims that Powell violated an unidentified provision or provisions of the INA. Compl. ¶¶ 76-89. The complaint asserts that Powell defrauded immigration officers by representing that she was entering the United States for vacation when her "sole purpose . . . was to kidnap the children." *Id.* at ¶¶ 78-81. This claim echoes Tait's first, which also alleged that Powell made false representations to secure custody of the children. *Id.* at ¶ 81. The commonality between the two claims, each

with roots in the dispute over child custody, prefigures a commonality in result. Since his third claim is centered on Powell's alleged misconduct in securing custody of the children, prevailing on the claim would warrant a remedy involving their custody, which places it within the orbit of domestic relations and, thus, outside the subject matter jurisdiction of federal courts. *See Schottel*, 2009 WL 230106, at *1.

Last on the field of battle, Tait advances his demand for a declaratory judgment. Compl. ¶¶ 90-100. He prays for a declaration that the children are citizens of the United States. *Id.* at ¶ 99. Even if Tait's declaratory claim sought merely such a limited and straightforward declaration of citizenship, it would surely run afoul of jurisdictional limitations on this Court's power because Tait has failed to exhaust administrative remedies. *See Henry v. Quarantillo*, 684 F. Supp. 2d 298, 302-03 (E.D.N.Y. 2010) (noting that 8 U.S.C. § "1503(a) grants district courts subject matter jurisdiction to declare, after an administrative denial to the contrary, than an individual is a national of the United States," unless the issue of the person's status arose in connection with a removal proceeding (footnote omitted)). But, in any event, the prayer's reach extends further still, which, importantly, also offers insight into Tait's transparent litigation plan. The second shoe to drop is Tait's request for a declaration that, as a result of the Court's declaration of the children's United States citizenship, "the status quo would be to return the children to the care and custody of their United States Citizen father." Compl. ¶ 99. Plainly, although cloaked partially in immigration law, all of Tait's claims manifest the same aim: to obtain custody of the children, notwithstanding the contrary rulings of Family Court.

Simply stated, Tait's complaint seeks to bring to federal court a dispute that centers on the custody of children. That the doors to the federal courthouse are barred to entry by this type of dispute does neither Tait nor the law any harm. Family court is available as a forum to consider

9

his claims. Indeed, Tait has actively participated in litigation pending in that forum. What brings Tait here is not his inability to access a forum to litigate this issue, but, rather, his failure to obtain a ruling to his liking. Accordingly, Tait's complaint falls squarely within the domestic relations exception to federal subject matter jurisdiction. As a result, the case was dismissed for lack of subject matter jurisdiction, without prejudice to plaintiff's right to seek appropriate relief in a state court of appropriate jurisdiction. *See Schottel*, 2009 WL 230106, at *1.

Dated: Brooklyn, New York
      February 27, 2017

/S/ USDJ ERIC N. VITALIANO

ERIC N. VITALIANO
United States District Judge